IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN YATES,

    Petitioner,

vs.

Case No. 05-3373-JTM

DAVID McKUNE, Warden,
Lansing Correctional Facility,
   and
PAUL MORRISON, Kansas Attorney General,

    Respondents.

**MEMORANDUM AND ORDER**

John Yates, petitioner, is currently an inmate at the Lansing Correctional Facility pursuant to his various convictions in the Kansas District Court for the District of Geary County. In 2002, he was convicted of attempted first-degree murder, aggravated kidnapping, aggravated robbery, arson, conspiracy to commit first-degree murder, conspiracy to commit aggravated kidnapping, and conspiracy to commit aggravated robbery. In 2004, the convictions of conspiracy to commit aggravated kidnapping and conspiracy to commit aggravated robbery were reversed and the sentences for these two convictions were vacated. Yates now seeks habeas relief under 28 U.S.C. § 2254 (1996) asserting ten constitutional violations as grounds for relief against respondents.[1] The court finds that habeas relief is not warranted and the § 2254 petition is denied.

---

[1] Phill Kline originally named as a respondent prior to Paul Morrison's election as Kansas Attorney General.

Yates, Kevin Risby, and James Rowell spent time together at Yates' home on April 11, 2002. Here, Risby began a conversation about carjacking a vehicle, and the three entertained the possibility that they might need to kill witnesses should they go through with the carjacking. The three then traveled to Michael Doyle's house and once there, they smoked marijuana and danced with a machete.

Later, in search of a ride to Salina to carry out the carjacking plan, the three ventured to Dervell Purnell's house where Risby convinced Purnell to drive them to Salina under the pretense of meeting girls there. Purnell agreed and drove the three to Salina along with his girlfriend, Jennifer Franklin. After perusing the city while Yates, Risby, and Rowell commented about vehicles they would like to have, Purnell noticed he was low on gas and decided they should return to Junction City.

Before entering I-70 to return to Junction City, Risby noticed a sport utility vehicle (SUV) which Yates said he wanted. Risby had Purnell stop, and the SUV pulled up behind Purnell's car to see if they needed help. Yates, Risby, and Rowell went to the SUV where Yates approached the driver's side of the SUV and pulled a gun on Michael Streeter, its driver. Yates had Streeter sit in the back seat where he was joined by Rowell. As Yates drove the SUV back to Junction City, with Risby sitting in the passenger seat, Streeter was beaten with a pistol and forced to turn over $250.00 in cash, an ATM card, and the PIN access number for the ATM card. Upon shredding a picture of Streeter's daughter that was found within the car, Yates informed Streeter that he would never see his daughter again.

Yates, Risby, and Rowell then retrieved the machete from Doyle's house and traveled, in the SUV, to the remote Milford Lake spillway, where Streeter was forcefully removed from the vehicle.

Streeter was then beaten, kicked, and hacked with the machete. Streeter was also choked while one of the assailants gave the instruction that his breathing should cease. After he lost consciousness, Streeter was run over by Yates with the SUV as the three retreated from the scene and returned the machete to Doyle. Next, Yates, Risby, and Rowell withdrew money from Streeter's account with his ATM card.

The following morning, Streeter was discovered. He had suffered numerous injuries from the beatings, with permanent damage to the vision in his right eye and other scarring. That same morning, Yates and Risby took the SUV to another remote area in Geary County where it was cleaned of fingerprints and burned. Following their arrest, Yates confessed to the crimes.

After his jury trial concluded, Yates appealed to the Kansas Court of Appeals which resulted in the Court affirming his convictions in part and reversing in part. In *State v. Yates*, No. 89,938, Slip op. (Kan. App. 2004) (unpublished opinion), the court reversed Yates' convictions as to conspiracy to commit aggravated kidnapping and conspiracy to commit aggravated robbery, finding only one agreement encompassed all of the conspiracies he was convicted of. The sentences given for these two conspiracy convictions were vacated, but the court denied relief for Yates' other grounds on appeal (the ten remaining grounds from his appeal form the basis of this habeas petition). On September 14, 2004, the Supreme Court of Kansas denied review.

Yates' application for federal habeas relief is governed by the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. *See Hooks v. Ward*, 184 F.3d 1206, 1213 (10th Cir. 1999). The pertinent sections of AEDPA state that the court may not grant a habeas petition, unless the claim that was adjudicated on its merits at the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (1996). For the federal court to accommodate a habeas petition, the determinations made by the state court must meet the "substantially higher threshold" of being unreasonable as opposed to being merely incorrect. *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007); *see also Williams v. Taylor*, 529 U.S. 362, 410 (2000). In addition, factual findings made by the state court are presumed to be correct, unless controverted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The " 'contrary to' clause" under 28 U.S.C. § 2254(d)(1) has been interpreted to mean that a writ of habeas corpus may be granted if the state court, "arrives at a conclusion opposite to that reached by this Court on a question of law" or "decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Similarly, the " 'unreasonable application' clause", under this provision, is interpreted as allowing a writ of habeas corpus to be granted when the state court, "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The ten issues raised by Yates in his habeas petition all fail to show that the Kansas state courts made determinations "contrary to," or unreasonably applied, established federal law or made unreasonable determinations of fact. Yates first contends that the Kansas district court's action in empaneling an anonymous jury at his trial "undermined the presumption of innocence" in violation of the Sixth Amendment. Dkt. No. 1 at 24. There is no established ruling from the United States Supreme Court on error arising from an anonymous jury. However, several circuits have found that

empaneling an anonymous jury is acceptable under certain circumstances and does not violate a defendant's constitutional rights. *See e.g. U.S. v. Thomas*, 757 F.2d 1359, 1363-1365 (2d Cir. 1985); *U.S. v. Krout*, 66 F.3d 1420, 1426-1428 (5th Cir. 1995); *U.S. v. Mansoori*, 304 F.3d 635, 650-652 (7th Cir. 2002).

The Kansas Court of Appeals, recognizing that the jury in this case was not completely anonymous, analogized the facts at hand to the case of *U.S. v. Peoples*, 250 F.3d 630 (8th Cir. 2001), in which the venire panels and jurors were identified by numbers even though their names were known. *Yates*, slip op. at 3. From the *Peoples* opinion, the Kansas court observed that situations involving less than complete anonymity do not require a finding by the court that the juror's safety may be in danger, and the court in *Peoples* explained the juror numbering system to the panel to avoid prejudice. *Yates*, slip op. at 3 (citing *Peoples*, 250 F.3d at 635-636).

Based on his experience, the trial judge for the Geary County Court reasoned that serious charges, like those against Yates, provided an incentive for the use of identifying jurors by numbers. *Id.* at 2. The Court then informed the venire panels of the procedure. *Id.* at 3. The Kansas Court of Appeals further commented that "the case had apparently received fairly high publicity," "involved a relatively small community," "the charges and potential penalties were significant," and "the trial implicated three acquaintances." *Id.* at 4. Considering that the trial judge's method of numbering jurors was within the range of measures upheld by other circuit courts, this court is unwilling to concede that Yates' constitutional rights were violated. Absent United States Supreme Court precedent to the contrary, the trial judge's method of identifying jurors by number, rather than name, was not unreasonable.

5

The second issue raised by Yates is that his right to a fair trial under the Sixth Amendment was violated when the trial court admitted evidence of his prior carjacking. More specifically, he contends that he did not receive timely notice of the state's intent to use the evidence, that the state originally said they would not use the evidence, and that the evidence was too dissimilar to the current charges to be admissible. As pointed out in respondent's answer, this contention as to the admission of evidence is a state law matter, thus the court's review is limited to violations of the petitioner's constitutional rights resulting from the alleged error. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The findings of the trial court as to the admissibility of prior offenses will not be disturbed, unless the prejudice that resulted violated petitioner's right to a fair trial. *Smallwood v. Gibson*, 191 F.3d 1257, 1277 (10th Cir. 1999).

Two points reveal that Yates' constitutional rights were not violated when his prior carjacking involvement was admitted into evidence. First, the state permissibly resorted to use of the evidence to rebut Yates' compulsion defense and did not use the evidence in its case-in-chief. *See U.S. v. Boone*, 279 F.3d 163, 187 (3rd Cir. 2002) (allowing evidence of prior drug-trafficking under Fed. R. Evid. 404(b) for the specific purposes of a) rebutting a defense when a defendant alleged that he did not know that a bag he was paid $100 to deliver contained cocaine, and b) revealing defendant's relationship with other parties in the case). *See also U.S. v. Hauck*, 586 F.2d 1296, 1299 (8th Cir. 1978). Since evidence of prior convictions may be used in rebuttals to discredit defenses under the Federal Rules of Evidence, this court sees no reason why the state court's use of evidence in the same manner would violate Yates' constitutional rights.

Secondly, Yates' direct testimony alluded to the prior carjacking. Although the trial court did not provide instruction limiting consideration of the prior carjacking to assessment of the validity

6

of Yates' defense of compulsion, Yates was not injured by this deficiency either. Yates' testimony on the matter displays either his carelessness or lack of concern for keeping the matter out of evidence and fails to warrant grounds for granting a habeas petition.

The third issue raised by Yates concerns purported violations of his Fifth and Fourteenth Amendment rights stemming from separate *Miranda* warnings given to him. Yates was given a first set of *Miranda* warnings by Undersheriff Roman and later, a second set of warnings by Kansas Bureau of Investigation Agent Kerr. Yates claims that the second set of *Miranda* warnings was insufficient and caused confusion such that his waiver of his rights was not knowing and voluntary.

The Kansas Court of Appeals found that both sets of *Miranda* warnings contained the necessary elements, despite the fact that they varied, and this court is unwilling to conclude that its finding was an "unreasonable application of clearly established Federal law." *See generally California v. Prysock*, 453 U.S. 355 (1981) (Stevens, Brennan & Marshall, JJ., dissenting) (holding that the form in which *Miranda* warnings were given did not merit relief, provided the substance of the warnings was present). The court is also unwilling to infer that Yates' confession to the crimes following the *Miranda* warnings administered by Agent Kerr was a product of the confusion he reportedly experienced when the *Miranda* warnings differed. *Cf. U.S. v. Gell-Iren*, 146 F.3d 827, 830 (10th Cir. 1998) (stating that original *Miranda* warnings are still effective, despite a change in interrogators without new warnings having been given). As a result, Yates' third issue fails to merit habeas relief.

Yates' fourth and fifth points of contention are similar, but both contentions may be easily dismissed. In the fourth contention, Yates asserts a violation of his Fifth and Fourteenth Amendment rights because the district court did not provide an instruction on the lesser included offense of

7

aggravated battery to the attempted murder charge. In the fifth contention, Yates asserts that he was denied due process because the district court did not provide instructions on the lesser included offenses of kidnapping and robbery to the aggravated kidnapping and aggravated robbery charges. As respondents observe, each point of contention is to no avail. In non-capital cases, the Tenth Circuit Court, in following United States Supreme Court rulings, has stated that it does not recognize a constitutional right to jury instructions on lesser included offenses. *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (citing *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980)). Federal habeas courts may not even review lesser included offenses arguments. *Id.*; *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988). From the outset, this court is foreclosed from granting a habeas petition under these two points of contention.

Yates argues, in his sixth contention, that his constitutional rights under the Double Jeopardy Clause of the Fifth Amendment were violated due to his multiplicitous convictions of attempted murder, aggravated robbery, and aggravated kidnapping. Indeed, it is a violation of the Fifth Amendment to punish a defendant multiple times for only one offense. *Whalen v. U.S.*, 445 U.S. 684, 688 (1980). But, the Kansas Court of Appeals' determination that the offenses of attempted murder, aggravated robbery, and aggravated kidnapping were not multiplicitous because they each required proof of an additional fact, restates the same conclusion reached by the United States Supreme Court. *See Blockburger v. U.S.*, 284 U.S. 299, 304 (1932) (requiring proof of an additional fact to differentiate two offenses from only one). This court cannot say that the Kansas Court of Appeals' determination would be "contrary to" or an "unreasonable application of" federal law.

Yates next raises issue number seven, declaring that his rights to notice, due process, and a fair trial under the Fourteenth Amendment were violated when the trial court permitted the state to

amend its complaint to include specific overt acts under the conspiracy charges. This court may only view this claim to the extent that Yates' constitutional rights were violated, and may not review "state-court determinations" involving "state-law questions." *See Estelle*, 502 U.S. at 67-68. When the trial court granted the state's motion to amend its complaint at the close of evidence, this did not inhibit Yates' right to a fair trial because only specific overt acts were added and not any new charges. The United States Supreme Court, in addressing the constitutional requirements of notice necessary to allow a defendant to adequately prepare for a trial, stipulated that the person accused must be informed of the "nature and cause of the accusation." *Turner v. U.S.*, 396 U.S. 398, 427 (1970) (internal quotation marks omitted). The Court further provided that this notice was necessary to allow the accused to "intelligently prepare to defend himself on each of the essential elements of the charge." *Id.* at 428. Since no new charges were added to the complaint, Yates was still aware of the elements he would need to defend against pursuant to the original charges. With this understanding of United States Supreme Court precedent, it is apparent that the trial court's action in allowing the complaint to be amended was not unreasonable.

In Yates' eighth point of contention, he disagrees that the state's evidence was sufficient to support his arson conviction by the due process standard of "proof beyond a reasonable doubt." Respondents observe, "[P]etitioner appears to challenge both the factual findings of the state court and its application of the law." Dkt. No. 17 at 20. Beginning with the challenge to the factual findings, a federal habeas court, in studying conflicting testimony, presumes "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). The uncontroverted evidence narrates Yates' involvement in the crime from driving Risby to the gas station where Risby purchased the gas to burn the SUV,

to driving to the remote area where the SUV was burned, to his flight, with Risby, from the crime scene.  This court does not believe that the Kansas Court of Appeals made an "unreasonable determination of the facts in light of the evidence" when it upheld the jury's finding that the facts supported the arson conviction.  Although, conflicting testimony revealed Yates at one point wished to keep the car, this court must defer to the jury's resolution of this testimony in favor of the prosecution.

Moving onto to the application of the law challenge, the Kansas Court of Appeals found, based upon the evidence, that it was not irrational for the jury to find Yates guilty beyond a reasonable doubt "as an aider or abettor, or even as a principal" because the facts supported this finding.  *Yates*, slip op. at 10.  Similarly, respondents note that review of a claim such as this in a federal habeas petition involves "viewing the evidence in the light most favorable to the prosecution" to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319; *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003). The Kansas Court of Appeals came to their decision implementing a standard nearly identical to the federal standard in *Jackson*, and it would be difficult for this court to find that that decision was unreasonable, especially under the advisement given in *Jackson* to view the evidence in a light favorable to the prosecution.

Yates' ninth contention asserts that when added up cumulatively, the errors in this case deprived him of his constitutional right to a fair trial.  The United States Supreme Court has not ruled that error may be aggregated to warrant relief, and there appears to be a split of authority between the circuits as to whether to grant habeas petitions on these grounds.  *Compare Griffin v. Delo*, 33 F.3d 895, 903-904 (8th Cir. 1994) (citing *Byrd v. Armontrout*, 880 F.2d 1, 11 (8th Cir.), *cert. denied*,

494 U.S. 1019 (1989) for the proposition that "[E]ach claim for habeas relief must stand on its own merits") *with Darks v. Mullin*, 327 F.3d 1001, 1017 (10th Cir. 2003).  Although the Tenth Circuit recognizes cumulative error, the circuit requires that harmless errors when combined must still aggregate such that "[T]hey [the harmless errors] can no longer be determined to be harmless" and would undermine the fairness of the trial. *Darks*, 327 F.3d at 1018.  Considering that, this court does not find, and the Kansas Court of Appeals did not find, any errors that may be accumulated from the grounds raised in Yates' petition coinciding with the grounds raised on appeal, this claim does not warrant relief.  It also cannot be said that the Kansas Court of Appeals' determination on this matter was unreasonable when compared to federal law because it did not make a determination either way as to the application of law to cumulative error, finding only a single error in Yates' multiplicitous conspiracy convictions.

The final issue raised by Yates involves the trial court's decision to rely on Yates' prior juvenile adjudications during sentencing.  Yates claims that since there was no right to a jury trial in the prior juvenile adjudications, the trial court violated constitutional decrees set out in *Apprendi* and *Gould* when considering these adjudications to increase his sentence.  The Supreme Court has approved the use of prior convictions to increase sentences given for convictions. *Apprendi v. New J*, 530 U.S. 466, 490 (2000).  The trial court in this case enhanced Yates' sentence by taking into consideration his prior convictions which was not unreasonable in light of United States Supreme Court precedent. *See Id.*; *see also Almendarez-Torres v. U.S.*, 523 U.S. 224, 247 (1998) (rejecting petitioner's claim that recidivism is an element that the government must prove to the jury, like any other element, beyond a reasonable doubt).

The other aspect of this issue is that the trial court used Yates' prior juvenile adjudications, which did not afford a right to a jury trial, to increase his sentence. Circuit courts, in resolving this matter, have gravitated toward the side of allowing prior juvenile adjudications to be used in enhancing conviction sentences. *See U.S. v. Smalley*, 294 F.3d 1030, 1033 (8th Cir. 2002) (emphasizing that juvenile proceedings contain many of the features found in a jury trial and the judge makes a conviction after a finding of guilt beyond a reasonable doubt; jury trials are not constitutionally required); *U.S. v. Jones*, 332 F.3d 688, 696 (3d Cir. 2003) (approving of the outcome in *Smalley*); *Boyd v. Newland*, 467 F.3d 1139, 1152 (9th Cir. 2006); *U.S. v. Burge*, 407 F.3d 1183, 1190-1191 (11th Cir. 2005); *contra U.S. V. Tighe*, 266 F.3d 1187, 1194 (9th Cir. 2001) (stating that prior convictions may be used for sentence enhancement only when the proceedings involve "the right to a jury trial and proof beyond a reasonable doubt"). Sentiment among the circuits overwhelmingly contradicts Yates' assertion. Without express guidance from Supreme Court precedent, this court does not find that the trial court's decision to use prior juvenile adjudications as a sentence enhancement was either "contrary to" or an "unreasonable application of" federal law.

IT IS ACCORDINGLY ORDERED this 25th day of July, 2007, that the Petition for Writ of Habeas Corpus of petitioner Yates (Dkt. No. 1) is hereby DENIED.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE